NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

———————————————————————

|  |  |  |
|---|---|---|
| | ) | |
| ENGLEWOOD HOSPITAL AND | ) | |
| MEDICAL CENTER, | ) | |
| | ) | Hon. Harold A. Ackerman |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-0637 (HAA)(MF) |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| AFTRA HEALTH FUND, | ) | **ADOPTING MAGISTRATE** |
| | ) | **JUDGE'S REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |
| | ) | |

———————————————————————

Camille Joseph Kassar, Esq.
MALOOF, LEBOWITZ, CONNAHAN & OLESKE, P.C.
127 Main Street
Chatham, New Jersey 07928
*Attorney for Plaintiff*

Lisa M. Gomez, Esq.
COHEN, WEISS AND SIMON, LLP
206 Claremont Avenue
Montclair, NJ 07042
*Attorney for Defendant*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on a motion by Plaintiff Englewood Hospital and

Medical Center (the "Hospital") to remand the proceedings to the Superior Court of New Jersey,

Bergen County, Law Division, pursuant to 28 U.S.C. § 1447(c), and for counsel fees. Defendant

AFTRA Health Fund (the "Fund") removed the action to this Court, and now opposes a remand.

This Court referred this motion to Magistrate Judge Mark Falk, who entered a Report and

Recommendation ("R&R") on August 23, 2006. Magistrate Judge Falk recommended that

Plaintiff's motion to remand be granted and Plaintiff's motion for counsel fees be denied.  After

a thorough review of the record and the R&R, the Court agrees with Magistrate Judge Falk's

reasoning and conclusions, and will adopt them and remand this case.

## I.      BACKGROUND

The Hospital is an organization engaged in providing medical services to the general

public.  The Hospital entered into a contract with the Multiplan, Inc. network of hospitals

("Multiplan"),  wherein it agreed to become a member of a PPO Network and to accept

discounted payments for group health coverage services provided to subscribers, subject to

considerations detailed in a contract between the Hospital and Multiplan.[1]

The Fund is an "employee welfare benefit plan" as defined in Section 3(1) of the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1) *et seq.*  The

Fund provides medical, surgical, hospital and other benefits to individuals covered by collective

---

[1] Although the parties do not define "PPO," this Court understands the acronym to mean a "Preferred" or "Participating Provider Organization," which

> is a means of health insurance whereby the insurance company contracts with a network of health care providers, including hospitals.  The insurer attempts to negotiate favorable rates of reimbursement for the cost of health care that reflect the volume of patients the insurer expects to deliver to the preferred health care provider.  The insurer then passes through some of this cost savings to subscribers in the form of lower co-payments and reduced deductibles, which creates the incentive for the patient to use the preferred providers and, in turn, creates the volume to support the "discount."

*Drs. Steuer & Latham, P.A. v. Nat. Med. Enters., Inc.*, 672 F. Supp. 1489, 1513 (D.S.C. 1987).

bargaining agreements with the American Federation of Television and Radio Artists

("AFTRA").  At all relevant times to this action, the Fund made health coverage available to its

participants through Multiplan.  Through a contractual relationship with Multiplan, the Fund has

access to discounted rates for covered services.

In December 2005, the Hospital filed an action in the Superior Court of New Jersey

alleging common law claims for breach of contract and unjust enrichment.  Primarily, the

Hospital asserts that it was an intended third-party beneficiary of the contract between the Fund

and Multiplan, and that the Fund failed to comply with the payment schedule set forth in the

Fund's contract with Multiplan.  The Fund's compliance with the payment schedule, the Hospital

maintains, was required to obtain reduced rates from the Hospital.  Accordingly, the Hospital

seeks $35,602.50 in damages – the difference between the discounted amount paid by the Fund,

and the total amount charged for the medical services.

In February 2006, the Fund removed this action pursuant to 28 U.S.C. § 1441, on the

grounds that the Hospital's claims are completely preempted by ERISA, thereby presenting a

federal question.  The Hospital subsequently brought this motion to remand.  Oral argument in

this matter was heard on August 10, 2006 before Magistrate Judge Falk, and the R&R was

entered on August 23, 2006.

## II.    ANALYSIS

### A.    REVIEW OF A REPORT AND RECOMMENDATION

Federal Rule of Civil Procedure 72(b) vests a United States magistrate judge with

authority to hear a pretrial matter dispositive of a party's claim or defense and to enter a

recommendation for disposition of the matter.  Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. §

636(b)(1).  Any party objecting to the recommended disposition of the matter may serve and file

specific, written objections within ten days of being served with the magistrate judge's

recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2).

Thereafter, the district judge "shall make a *de novo* determination of those portions to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the Magistrate Judge."  L. Civ. R. 72.1(c)(2).

      **B.**    **STANDARD OF REVIEW**

    An action filed in state court may be removed to a federal court if the case could have

originally been brought in that federal forum.  28 U.S.C. §§ 1441(a), 1446(a); *see also City of

Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997).  A motion to remand is

governed by 28 U.S.C. § 1147(c), which provides that a removed case shall be remanded to state

court "[i]f at any time before final judgment it appears that the district court lacks subject matter

jurisdiction."  The facts supporting jurisdiction are evaluated "according to the plaintiff's

pleading at the time of the petition for removal," and the party removing the action bears the

burden of establishing federal subject matter jurisdiction.  *Abels v. State Farm Fire & Cas. Co.*,

770 F.2d 26, 29 (3d Cir. 1985).  In this Circuit, removal statutes are strictly construed against

removal and any doubts are resolved in favor of remand.  *Boyer v. Snap-on Tools Corp.*, 913

F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d

1006, 1010 (3d Cir. 1987)).

    Under 28 U.S.C. § 1441, a defendant may remove from state court to federal court, "[a]ny

civil action . . . of which the district court . . . [has] original jurisdiction."  However, the

jurisprudence of the Supreme Court and the Third Circuit dictates that under the "well-pleaded

complaint rule," a defendant may not remove a case unless a federal question is presented on the

face of the plaintiff's properly pleaded complaint.  *See Caterpillar Inc. v. Williams*, 482 U.S.

386, 392 (1987); *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936); *Ry. Labor Executives

Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936 (3d Cir. 1988).  Most importantly, it is

"settled law that a case may not be removed to federal court on the basis of a federal defense,

including the defense of pre-emption, even if the defense is anticipated in the plaintiff's

complaint . . . ."  *Caterpillar*, 482 U.S. at 393.  The well-pleaded complaint rule "makes the

plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on

state law."  *Id.* at 392.  Here, it is undisputed that the Hospital's Complaint does not expressly

refer to any federal claim.

The Supreme Court, however, has developed an "independent corollary" to the well-

pleaded complaint rule which recognizes that "Congress may so completely preempt a particular

area, that any civil complaint raising this select group of claims is necessarily federal in

character."  *Ry. Labor Executives Ass'n,* 858 F.2d at 939 (citing *Metropolitan Life Ins. Co. v.

Taylor*, 481 U.S. 58 (1987)).  This independent corollary, known as the "complete preemption"

doctrine, acknowledges that there may exist some circumstances where federal law creates a

federal remedy for some wrong and displaces all state law remedies regardless of what law the

plaintiff relies upon in the complaint.  Because the Supreme Court has only invoked the doctrine

in "extraordinary" cases, this Court must construe it narrowly.  *See Caterpillar*, 482 U.S. at 393.

### C.    MAGISTRATE JUDGE FALK'S REPORT AND RECOMMENDATION

In his R&R, Magistrate Judge Falk properly relied upon the Third Circuit's recent

examination of the complete preemption doctrine under ERISA in *Pascack Valley Hospital v. Local 464 UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d. Cir. 2004). In *Pascack Valley*, the Third Circuit held that an action for breach of contract against an employee welfare benefit plan by a hospital is not removable as arising under the federal common law of ERISA, because the hospital did not have standing to bring a suit under ERISA, and because the plaintiff's breach of contract claims were predicated on a legal duty that was independent of ERISA. *Id.* at 404. The Third Circuit in *Pascack Valley* established a two-part test for determining whether a state court claim is completely preempted by ERISA, and thus removable to federal court. *Id.* at 400. Under the test, removal to federal court may occur "only if (1) the Hospital could have brought its breach of contract claim under [ERISA] § 502(a), and (2) no other legal duty supports the Hospital's claim." *Id.*[2]

With respect to the first prong of the *Pascack Valley* test, the Fund argues that the Hospital holds a valid assignment for both claims that relate to this action, and therefore has standing to sue under § 502(a) of ERISA. Magistrate Judge Falk correctly recognized that the Third Circuit did not resolve in *Pascack Valley* whether a hospital can establish standing to sue under this provision of ERISA based upon an assignment of a claim from a participant or beneficiary. Nevertheless, Magistrate Judge Falk properly noted that the presence or absence of an assignment in the record is not dispositive because the Fund is unable to overcome the second prong of the test articulated in *Pascack Valley*. (R&R at 16.) The "crux of the parties' dispute,"

---

[2] While addressing this issue, Magistrate Judge Falk also referred to an unpublished Third Circuit case that presented nearly identical facts, *Community Medical Center v. Local 464A UFCW Welfare Reimbursement Plan*, 143 F. App'x 433 (3d. Cir. 2005). Although the decision is not precedential, it is worth noting that *Community Medical* reinforces the Third Circuit's analysis in *Pascack Valley*. *Id.* at 435.

as Magistrate Judge Falk correctly concluded, "is the meaning of the subscriber agreement, the

contract that goes to the discounted rates." (*Id.*)  Hence, "the Hospital's right to recovery, if it

exists, depends on the operation of those third party contracts executed by the Plan." (*Id.*)  This

Court agrees with Magistrate Judge Falk's determination that this case was not properly

removable.[3]

### D.       OBJECTIONS TO THE REPORT AND RECOMMENDATION

In response to Magistrate Judge Falk's R&R, the Fund raised three main objections.

First, the Fund asserts that the existence of an assignment makes this case distinguishable from

other decisions within this Circuit, and therefore, this Court should not follow the apparent trend

of granting remand in such similarly situated cases.  The Fund recognizes that in the cases that

followed the *Pascack Valley* decision, "motions to remand have been granted where no

assignment was demonstrated or where the defendant consented to remand or failed to file an

opposition." (Def.'s Br. at 5.)  This Court is bound by the precedent established by the Third

Circuit in *Pascack Valley*.  The Fund, however, relies on a non-precedential opinion of a court in

this District in which remand was not granted.  *Saint Barnabas Med. Ctr. v. N. N.J. Teamsters*

*Benefit Plan*, No. 03 Civ. 3187 (D.N.J. August 22, 2006).  In this case presenting similar facts,

Magistrate Judge Hedges recently denied a plaintiff's motion to remand.  *Id.*  However, after the

---

[3] In his R&R, Magistrate Judge Falk also recommended that the Hospital's motion for counsel fees be denied.  Based upon the "tremendous amount of litigation" since *Pascack Valley*, and the legitimate factual issue raised in this case – the presence or absence of an assignment – Magistrate Judge Falk found that the matter was not frivolous. (*Id.* at 17.)  Additionally, in its response brief to the Fund's objections to the R&R, the Hospital raises no objections to Magistrate Judge Falk's recommendation that counsel fees be denied.  This Court agrees that the parties' dispute stemmed from differing interpretations of the law.  As such, the Hospital's motion for counsel fees is denied.

Fund briefed the instant opposition to the Hospital's motion to remand, Magistrate Judge

Hedges's opinion was reversed by Judge Martini.  *Saint Barnabas Med. Ctr. v. N. N.J. Teamsters*

*Benefit Plan*, No. 03 Civ. 3187, 2006 WL 3371740 (D.N.J. Nov. 20, 2006).  Judge Martini

expressly adopted the reasoning of Judge Lifland in four consolidated cases which presented

factually identical matters.  *Newark Beth Israel v. N. N.J. Teamsters Benefit Plan*, Civ. Nos. 03-

2922, 05-5309, 05-5737, 05-5742, 2006 U.S. Dist. LEXIS 70997 (D.N.J. Sept. 29, 2006).

According to Judge Martini, Judge Lifland's opinion was "based upon a correct interpretation of

the relevant law," which included *Pascack Valley* and *Community Medical*.  *Saint Barnabas*,

2006 WL 3371740, at *1.  As discussed more fully below, this Court agrees with Judge Martini's

assessment of *Newark Beth Israel*.  Therefore, the Fund's reliance on Magistrate Judge Hedges's

prior decision in *Saint Barnabas* is unavailing.[4]

Second, the Fund argues that the Hospital has standing to sue under § 502(a) of ERISA,

and therefore the first prong of the *Pascack Valley* complete preemption analysis has been met.

According to the Fund, the Hospital has standing to sue under § 502(a) of ERISA based upon the

Hospital's assignment.  The Fund relies on a decision of a court within this District which held

that a health care provider is an assignee of an insured's claim under a welfare benefit plan.

*Personnel Pool of Ocean County, Inc., v. Heavy & Gen. Laborers' Welfare Fund of N.J.*, 899 F.

Supp. 1362 (D.N.J. 1995).

Although this Court is not bound by the decision, as noted above this Court finds

---

[4] The Fund also cites to a similar matter decided by Magistrate Judge Arleo, *Saint Barnabas Med. Ctr. v. Local 810 Health & Welfare Fund*, No. 03 Civ. 1444 (D.N.J. April 24, 2006).  There, the plaintiff's motion to reopen and remand was denied, but, as the Fund concedes, only on procedural grounds.

instructive the recent decisions of other courts within this District including *Saint Barnabas* and *Newark Beth Israel*. The facts and issues in those cases are nearly identical to those in the present dispute. In *Newark Beth Israel*, the court noted that the burden of establishing a valid assignment had been met. *Newark Beth Israel*, 2006 U.S. Dist. LEXIS 70997, at *5. However, because the second prong of the *Pascack Valley* complete preemption analysis had not been met, the court recognized that it did not have to decide whether the first prong was satisfied. *Id.* Similarly, this Court need not decide whether the Hospital could have brought its breach of contract claim under § 502(a) because the Hospital's claims are predicated on a separate legal duty independent of ERISA.

Finally, the Fund argues, as it did before Magistrate Judge Falk, that the second prong of the *Pascack Valley* analysis is satisfied because the Hospital's claims do not arise from an independent legal duty, and that the disputed payments are "inextricably intertwined" with the terms of the ERISA plan. Specifically, the Fund asserts that there is no privity between the Fund and the Hospital based upon the Fund's agreement with Multiplan, and therefore there is no legal obligation to pay the Hospital for any particular service outside of the duty to pay for benefits pursuant to the assignment. In its Complaint, the Hospital asserts that it is was an intended third-party beneficiary of the contract between the Fund and Multiplan. The Hospital argues that the Fund has acknowledged a contractual relationship between the parties giving rise to an independent legal duty because the Fund had already taken the discount pursuant to its agreement with Multiplan. Accordingly, the Hospital argues, it is entitled to enforce its contractual right to full payment irrespective of the plan document and ERISA.

Again, this Court agrees with *Newark Beth Israel*'s interpretation of the Third Circuit's

ruling in *Pascack Valley*, and finds that the existence of an assignment does not affect that

analysis.  In *Pascack Valley*, the Court recognized that the Hospital's state-law claims were

predicated on a legal duty independent of ERISA even though the Hospital's claims, "to be sure,

are derived from an ERISA plan, and exist 'only because' of that plan."  *Pascack Valley*, 388

F.3d at 402 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).  The Third Circuit

noted that "[t]he crux of the parties' dispute is the meaning of . . . the Subscriber Agreement,

which governs payment for 'Covered Services furnished to Eligible Persons.'" *Id.*  Interpretation

of the ERISA plan might have formed an essential part of the Hospital's claims, the Court noted,

if coverage and eligibility were disputed.  *Id.*  However, coverage and eligibility were not in

dispute.  "Instead, the resolution of [the] lawsuit requires interpretation of the Subscriber

Agreement, not the Plan.  The Hospital's right to recovery, if it exists, depends entirely on the

operation of third-party contracts executed by the Plan that are independent of the Plan itself."

*Id.*

Here, as in *Pascack Valley*, the Hospital's right to recovery, if it exists, depends on the

operation of third-party contracts executed by the Fund.  *Id.*  Importantly, the dispute is not over

coverage and eligibility, *i.e.*, the right to payment, but rather over the amount of payment to

which the Hospital is entitled.  *See id.* at 402-03 (citing *Blue Cross of Cal. v. Anesthesia Care

Assocs. Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999)).  In *Anesthesia Care*, a decision

relied upon in *Pascack Valley*, the Ninth Circuit determined that claims asserted by a health care

provider against a health care plan for breach of the provider's agreement were not completely

pre-empted under ERISA.  *Anesthesia Care*, 187 F.3d at 1052.  The Fund disputes Magistrate

Judge Falk's reliance on *Anesthesia Care* because, unlike here, there existed a direct contractual

10

relationship between the plaintiff medical provider and the defendant.  Despite this factual

difference, the Third Circuit in *Pascack Valley* nevertheless found the ruling in *Anesthesia Care*

instructive, and identified three important similarities between the cases, including:

> (1) the Hospital's claims in this case arise from the terms of a contract–the Subscriber Agreement–that is allegedly independent of the Plan; (2) the participants and beneficiaries of the Plan do not appear to be parties to the Subscriber Agreement; and (3) "[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the [Hospital], but rather the *amount*, or level, of payment, which depends on the terms of the [Subscriber Agreement].

*Pascack Valley*, 388 F.3d at 403 (citing *Anestheia Care*, 187 F.3d at 1051).  The third similarity

identified by the Third Circuit is particularly relevant in the instant matter.  Therefore, because

the Hospital's claims are predicated on a separate legal duty independent of ERISA, the second

requirement for removal on the basis of complete preemption is not satisfied.[5]

---

[5] However, as the court in *Newark Beth Israel* aptly noted:

> "[T]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398; *Railway Labor*, 858 F.2d at 941.  It is possible that following remand the state court may still conclude that the plaintiff's state law claims are preempted, but "[t]hat issue must be left for determination by the state court on remand," as this Court "need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law." *Railway Labor*, 858 F.2d at 942. For the present, Defendant has not demonstrated that ERISA completely preempts state law, and therefore has not satisfied its burden of establishing federal subject matter jurisdiction. Accordingly, the case will be remanded to state court.

*Newark Beth Israel*, 2006 U.S. Dist. LEXIS 70997, at *7.

**III.**    CONCLUSION

It is therefore hereby ORDERED that Magistrate Judge Falk's August 23, 2006 Report

and Recommendation is ADOPTED and Plaintiff's motion to remand is GRANTED.  It is hereby

further ORDERED that this case is REMANDED to the Superior Court of New Jersey.


Newark, New Jersey
Dated: December 12, 2006

                                        /s Harold A. Ackerman
                                        U.S.D.J.